[File No. 6027.]

REDLINGER & HANSON CO., a Corporation, Appellant, v. CLARENCE H. PARKER, Respondent.

(243 N. W. 792.)

484

Opinion filed June 30, 1932.   Rehearing August 20, 1932.

*Schneller & Schneller* and *Heder & Lauder,* for appellant.

*George A. McGee, Harry E. Dickinson* and *Robert H. Bosard,* for respondent.

486

BURR, J. Under contract made with defendant to build the Leland Parker addition to his hotel in Minot and to remodel and repair the older portion the plaintiff began work in the forepart of 1929. The work was to be done under the supervision of the architect employed by defendant.

The contract between the parties specifically provides that the "General conditions of the contract, together with this agreement, Specifications and Drawings, form the Contract" between the parties, and these specifications and drawings are entitled "Leland Parker Hotel Addition, Minot, North Dakota, Sheets one to fifteen of Specifications entitled General Contract Leland Parker Hotel Addition, Minot, N. Dak. including General Conditions, pages one to eleven, Bidding

Blanks, Instructions to Contractor, and Sections one to fourteen and addenda dated May 9th, 1929."

These papers and sheets contain the provisions that "the owner without invalidating the contract may make changes by altering, adding to or deducting from the work, the contract sum being adjusted accordingly." They further provide that such work shall be executed under the contract as if these changes were included in the original contract "except that any claim for extension of time caused thereby shall be adjusted at the time of ordering such change." It is further provided that the "value of any such changes shall be determined by cost plus ten per cent" and it was made the duty of the plaintiff to keep and present the correct amount of the net cost in such form as the architect may direct. Plaintiff was to furnish the labor and material for the building.

During the process of building the defendant made several changes and alterations in the plans, and plaintiff says these changes not only increased the cost of material but also delayed the plaintiff in its work and caused it heavy damage. It is evident however, that unless the changes increased the cost plaintiff is not entitled to extra pay, and further that if the changes reduced the cost it was possible the plaintiff would be paid less than the contract price.

The complaint is two fold. It sets forth the terms of the contract in general and then alleges changes and alterations increasing the cost in the sum of $13,865.59 and damages caused by unnecessary delays amounting to $15,566.79. The original contract price was $76,764 and plaintiff admits it received from the defendant, on or before December 21, 1929, the sum of $73,308.75. Thus the plaintiff asks judgment for the remainder of the contract price and the further sum of $29,432.38 for increased costs and damages, or $32,887.63 in all. The complaint contains "a second cause of action" in which the claim of the plaintiff is alleged under an agreement to furnish labor and material and perform services for the defendant, and that the same were reasonably worth $106,196.38 of which no part has been paid except the sum of $73,308.75. The amount of judgment demanded therein is $32,887.63 with costs.

The answer sets forth the contract in full and the extras and deductions to be allowed, and then in counterclaim alleges damages to the

defendant through delays occasioned by the plaintiff and through faulty work in construction. The defendant alleges the plaintiff is entitled to judgment in the sum of $4,922.44; but asks a deduction in the sum of $1,550 because of his counter-claim.

During the trial the court required the plaintiff to elect whether it would stand on the contract or demand quantum meruit relief, and permitted the defendant to amend his answer in order to set up his counter-claim. This action of the court is specified as error.

In submitting the case to the jury the court submitted thirty-six questions on behalf of the plaintiff. These asked the jury to find "What if anything is due the plaintiff?" followed by a statement of some proposition in dispute, such as "For addition to fire escape," "For any delay caused by plumber," "For delay, if any, in approving steel details" and similar matters. The court then requested the jury to return "a verdict for the plaintiff without deducting anything which the defendant may prove in his case."

The court further submitted to the jury on behalf of the defendant special findings asking "What if anything is due the defendant for repainting bath room walls . . . for the sale of the shed . . . for failure to complete the buildings in time . . . for damages for improper construction of roof. . . .?" The court then said it "asked the jury to bring in a verdict in favor of the defendant if defendant has proved his claims or any of them, without regard to the amount which the jury may find due the plaintiff;" stating that "the court will later adjust the rights of all parties as may be shown by the verdicts."

Such action on the part of the court is specified as error on the ground that "there is no authority in law for such proceedings and that the same was not asked for or requested by either parties hereto, and it was a mere arbitrary method by the court without any legal precedent therefor and without any agreement thereto to arrive at a special verdict."

The jury made thirty-six findings in favor of the plaintiff amounting to $15,236.33, and four in favor of the defendant amounting to $2,637.50.

The defendant thereafter moved for a judgment reducing the amount the jury allowed the plaintiff by the elimination of thirteen items

found for it in the special findings. The plaintiff moved for judgment "notwithstanding the verdict returned in favor of the defendant."

The court made an order for judgment in the sum of $6,398.69, arriving at this amount by taking the findings favorable to the plaintiff, amounting to $15,236.33, deducting therefrom the sum of $2,637.50, allowed the defendant in the findings in his favor, and disallowing the thirteen findings for plaintiff challenged by the defendant, amounting to $6,200.14. Costs were allowed the plaintiff in the sum of $933.

The plaintiff appeals from this judgment and sets forth thirty-one specifications of error, many of which deal with rulings on the admission of testimony.

Appellant states that there are four general issues presented in this appeal, "excluding assignments of error on the admissibility of evidence." First. Under the pleadings and the evidence may the plaintiff recover on the quantum meruit basis and was it error on the part of the court to require the plaintiff to elect whether it would proceed on the quantum meruit basis or stand upon the contract? Second. If standing on its contract may the plaintiff recover for the thirteen items rejected by the court or any of them? Third. "Was the defendant entitled to damages because of the failure of the plaintiff to complete the building at the time specified, in the contract?" Fourth. "Was the defendant entitled to recover damages for the manner in which the roof was laid and constructed?"

It was not error for the court to require the plaintiff to elect whether it would stand upon the contract or sue upon a quantum meruit account. Though the complaint sets forth two alleged causes of action yet the facts stated by the pleader show the breach of but one primary right.

Our statute, § 7440 subd. 2, says the complaint shall contain "a plain and concise statement of the facts constituting a cause of action without unnecessary repetition." The answer admits the building was erected under the contract in writing. It is clear the plaintiff is seeking to recover for a breach of this contract. The contract contained provisions permitting changes in plans and in details and providing compensation therefor. These changes do not make a new contract, nor abrogate the old.

At the commencement of the trial a motion was made by the defendant demanding that plaintiff be required to elect at that time but this

motion was overruled. It was not until after over five hundred and fifty pages of testimony were taken that the court required the plaintiff to elect whether it would stand upon the contract or sue in quantum meruit. At that time the court stated that all of the testimony presented indicated the plaintiff was "relying upon his first cause of action." There can be no question about the correctness of this statement. There was no claim the contract was rescinded or abrogated or even changed in essence.

It is true there may be no inconsistency in the claim that the defendant agreed by contract to pay a sum stated and that the work that was done was worth the amount; but if the defendant agreed to pay the sum stated and the work was done the second point would become immaterial. Repetition of charges and counts for the same demand are confusing and should not be permitted unless the nature of the transaction be such as to render it difficult to determine the form of the agreement.

The plaintiff cites the cases of American Encaustic Tiling Co. v. Reich, 34 N. Y. S. R. 64, 11 N. Y. Supp. 776 and McLaughlin v. Engelhardt, 62 N. Y. Supp. 428, which show that it is not error for the court to refuse to compel an election; but these cases were actions to recover the price, and the contract was referred to as proof of the value. In the case of Wilson v. Smith, 61 Cal. 209, the trial court had denied a motion to elect upon what theory the plaintiffs would proceed to trial. Though the California code requires the complaint to be stated "in ordinary and concise language," the court said "plaintiff may set them out in two separate forms when there is a fair and reasonable doubt of his ability to safely plead them in one mode only;" and held therefore, "we can not say the ruling was erroneous." In the case at bar it cannot be said there is any reasonable doubt as to the ability to plead safely.

Appellant cites the case of Willard v. Carrigan, 8 Ariz. 70, 68 Pac. 538, where the court held it was not error to deny election. In that case there might be difficulty in proving a contract because it was alleged to be an oral one, and the court said "that while in a general way it is not permissible for a pleader to state his one single cause of action in more than one way yet there are conditions and circumstances which make it permissible for him to state them in as many ways as proof

may make it necessary. It is even difficult to tell in advance whether the evidence will reveal an express contract or an implied contract." There is no such difficulty in this case because it is alleged by the plaintiff and admitted by the defendant that the work was done under a written contract. The case of Utter v. Buck, 120 Ill. App. 120, is to the same effect.

The general rule is that such motions are addressed to the discretion of the court. See Theodore Wetmore & Co. v. Thurman, 121 Minn. 352, 141 N. W. 481; 5 Enc. Pl. & Pr. 324. Mere repetition of the facts constituting a basis for relief for breach of a primary right does not constitute an independent cause of action. Pipan v. Ætna Ins. Co. 58 N. D. 435, 441, 226 N. W. 498; Matson v. Dane County, 172 Wis. 522, 179 N. W. 774, 775. The whole matter is well treated in Purcell v. St. Paul F. & M. Ins. Co. 5 N. D. 100, 64 N. W. 943, which indicates that where a complaint sets forth two causes of action for the recovery of a single claim—one for a written contract of insurance and the other upon a promise to pay the amount as a specified sum—the proper procedure is to require the plaintiff to elect. This court said therein, "the defendant may move to compel the plaintiff to elect on which theory he will try his case. If he does not so move either before or at the trial, the plaintiff may recover on either cause of action if the evidence will justify such a recovery."

The second main proposition deals with thirteen special findings in favor of the plaintiff rendered by the jury and rejected by the trial court on the ground that there was no evidence to sustain any of them as additional allowances.

The burden was upon the plaintiff to show the changes were ordered, that they increased the cost, and the amount of cost for each item disallowed by the court, and, where it claimed damages for delay etc., it is necessary for it to show that such delay was caused by the defendant, and not by itself or by the nature of the contract and undertaking.

These items were submitted by the court, for determination by the jury as claims of the plaintiff, and thereafter were disallowed on the ground there was no evidence supporting any amount. This was done in an excess of caution in order that all matters claimed by either side could be determined by the jury and if upon a more careful examina-

tion, the court found there was no evidence, the amounts could be disallowed. This was the policy of the trial.

The first item disallowed was the allowance of the sum of $2,500 as delay on the part of the defendant "in approving steel details." Under the specifications it was the duty of the plaintiff to prepare the shop drawings and submit the same to the architect in order that the details of the work could be discussed and the approval of the architect secured. It was the duty of the architect to "furnish a complete copy of the specifications and general detailed drawings to the contractor" and any further detailed information not shown upon the drawings the architect was to provide, "at the time of awarding the contract." There is testimony tending to show that some time elapsed before the architect furnished to the contractor what was necessary, but there is an entire absence of proof showing when the steel was ordered, when it was received, and when the steel details were approved. This contract was for remodeling a building and it was apparent to all parties that personal examination of the building as it then stood was necessary and that after the awarding of the contract some examination would have to be made in order to ascertain just what was the length of steel beams required. The building was being used while alterations were being made and of course, the parties did not want to uncover more of it than was necessary from time to time. The specifications and instructions required the contractor to "thoroughly examine the existing part and plans and specifications and requires him to thoroughly acquaint himself with all the details of this work. He shall also obtain and verify all denominations of the present work and check the same against the new work." There is an absence of proof showing when the contractor made such examination and check, whether the architect delayed in co-operating with him and when this portion of the examination was completed. There is no evidence upon which the jury could base the findings and so the court was justified in rejecting it.

The jury found for the plaintiff in the sum of $318.25 as the "extra cost of plastering and re-plastering on account of delay." This portion of the work was sublet by the plaintiff. There is some testimony which would indicate careless work on the part of plumbers which caused re-plastering. The plumbing was the subject of a separate contract. There is no evidence showing the plaintiff to be liable to the

sub-contractor because of any delay or extra work caused by the plumbers, nor is there any proof that the plaintiff either paid any extra sum or was liable to the sub-contractor for any extra sum on account of this item. The court therefore was justified in rejecting such item.

The jury found, and the court disallowed the claim of the plaintiff for $1,920 for delay caused by the plumbers. There is testimony showing that owing to the work of the plumbers men had to be shifted over to another portion of the work. That the plaintiff could not complete its work until the plumbing was completed is evident. The testimony shows a shift of men but does not show men were idle. It is true witnesses testify that the work of the plumbers caused a certain number of days' delay; but does not show plaintiff's men were idle during that time. The plumbing was a separate job; the plaintiff understood and must have contemplated such delays as are necessarily incident to such work and failed to show extra delay or loss therefor. The court was right in disallowing this item.

The jury allowed the plaintiff $200 for changes "in pent house on Leland-Parker Hotel." It is undisputed those changes were made and there is ample evidence to show that the changes increased the cost. There was "extra" steel, said to amount to $300; there is evidence as to the increase in the cost, and the jury found for the plaintiff in the sum of $200 only. There was evidence on this matter to go to the jury and therefore the finding of the jury is conclusive. This amount should not have been disallowed by the district court.

The jury allowed the plaintiff $35.10 for extra concrete beams to carry slabs to the end of the corridors, $12.65 for wrecking and rebuilding the coping, $15.94 for cutting into the joist of the old building for the new steel beams, $113.65 for refitting the steel in the corridors and the pent house. These are items 5, 6, 7 and 8, in the list of special findings challenged. The evidence is voluminous on all matters and it is difficult to piece all together for each item, but there is testimony showing such work was required in addition, that it cost the plaintiff extra work and apparently was based upon the standard fixed by the contract. We believe there was sufficient evidence to take these matters to the jury and therefore the jury's finding should be sustained.

The jury allowed the plaintiff $197.65 "for leveling parapet wall"

and the court disallowed this item. This was done on the theory that the work of leveling was included in the contract. The new wall was to be attached to one of the outside walls of the old Parker Hotel and this was specified in the contract. In order to attach the new wall it was necessary to remove part of the old wall. It is clear that the wall could not be attached without some leveling, or work on the old wall, and so much change in the old wall as was necessary for this attachment was included in the contract and plaintiff cannot recover for this. While it is the claim of the plaintiff that in addition to this he was required to do more work in leveling the parapet wall than necessary there is no proof to this effect and therefore the rejection was correct.

In excavating for the new work plaintiff was compelled to work near the foundation of a building known as the Blackstone Apartments. These were adjacent buildings, and under the direction and upon the order of the architect plaintiff was required to build a sustaining wall. It was not specifically required by contract but the contractor was to "thoroughly protect and shall be responsible for any and all damage to adjoining property." It is claimed plaintiff cannot recover because this was necessarily included in the work. Plaintiff attempts to show the work was wholly unnecessary and was therefore clearly extra, that he could otherwise and without this cost "thoroughly protect" adjoining property. That the plaintiff did the work is clear and that the amount allowed by the jury $64.24 is a reasonable sum is not seriously disputed. The real dispute is whether it was so connected with the work as to be included in the contract price or was entirely unnecessary. We do not construe the contract to mean that whatever expense and cost the architect should require in this particular must be borne by plaintiff. There is nothing in the contract saying specifically this protection must be as ordered by defendant. Testimony on the part of the plaintiff in the case was that this was unnecessary even for the purpose of protecting adjacent property. If it was unnecessary but was required by the defendant the plaintiff should recover. This was a matter for the jury and therefore the allowance should be sustained.

Items 11 and 12 are for $36.33 and $18.75 respectively. It is the claim of the plaintiff that the former was additional cost in concrete items and steel lintel on the elevator and the latter was for a back slab for the stair well on the fifth floor. These were changes required by

the defendant; and there is evidence showing the amount allowed was the amount of the extra cost according to the standard fixed by contract. In such case the amount allowed by the jury should be given the plaintiff.

The thirteenth item is one for $1,000 allowed by the jury for "delay caused by changes in the plans, if any, at instance of the defendant." The jury allowed the sum of $1,000 but before the plaintiff could recover this item he must show that there was this delay over and above what was incident to the work of the contract, or occasioned by other causes, that this delay was caused by the defendant, and wherein and for what sum he was damaged. There is a failure of proof on this point. That there was delay from some source may be assumed; but whether it was caused by incapacity on the part of the plaintiffs' foreman, the difficulty in securing and retaining help, delayed shipments of material, or other delays is not clear. Before the plaintiff can recover it must show that the change in the plans caused delay. There is nothing to indicate but what plaintiff's crew was working on other portions of the contract while certain changes were being made. The contract contemplated changes and it became the duty of the plaintiff to accommodate itself to such changes. There is an absence of proof showing delay caused solely by change in plans, which either prevented the plaintiff from working or increased his expense.

The plaintiff complains of the special finding of the jury in favor of the defendant allowing the latter $1687.50 as "damages for failure to complete the building in time," and also of the finding of the jury in favor of the defendant allowing the latter $775 "for damages in improper construction of roof."

The contract is dated May 14, 1929, and therein "the contractor agrees that all work under this contract shall be completed, ready for occupancy, within eighty-five (85) days (working) from the above first written date." The contract contains this provision: "it is further mutually agreed by and between the parties hereto, that the owner shall pay the contractor twenty-five dollars ($25.00) per day for every working day that this contract is entirely completed on or before the above completion day, and the contractor agrees to pay the owner the said sum per every working day after the above completion day."

The work was not completed within eighty-five work days from

May 14, 1929. The burden of proof was upon the defendant, to show not only the fact of delay, and the number of working days in excess of the completion day; but also that this delay was not caused by himself. It is the claim of the defendant that there was a delay of 165 days; but defendant does admit that after the contract was entered into there were changes made and additions required which consumed thirty days extra time. True the contract made provision for such changes; but it also provided the contract should be adjusted to meet these changes. The testimony shows that one J. Howard Hess was the architect who drew the plans and specifications, and who represented the defendant in the general superintendance of the building, and who required the changes that were made. When the contract was made it was agreed the steel details should be available at the time the contract was let. This agreement for bonus or damages was made with the provisions of the contract in mind. It is the contention of the plaintiff that all of the delay was caused by the defendant, and was unnecessary. We have already held it has failed to prove the defendant caused unnecessary delay; but this does not excuse the defendant from showing that the changes made and extras required did not necessarily consume the extra time. If they were the cause of all the delay the plaintiff could not recover for delay because it agreed that such changes should be made; and if those changes were such as necessarily required the extra time for the completion of the building it is clear that defendant can not recover the damages for delay. Some of these changes, strictly speaking, were not connected with the building itself, such as work on sidewalk, but they were required by the defendant. There was a provision in the contract that the work should be carried on only in such way as not to interfere with the regular business of the hotel. This was an addition and the hotel was in operation all of the time. The parties had this non-interference in mind, specifically provided for it, required the work should not begin before eight A. M. and otherwise contemplated that the business of the defendant would be paramount. This necessarily caused delay and it was such delay as clearly could not be determined in advance. There is no proof that plaintiff caused delay not contemplated by the contract. Defendant says that the business of the hotel was worth $100 per day and therefore the penalty of the $25.00 per day was very reasonable; but where

the defendant requires that the work shall·be subordinate to its business which changes from day to day, and also requires additions and changes which necessitated the necessary time·it is the duty of the defendant to show delay over and above what was required by these. The testimony covers over 1360 pages and manifestly there may be ·portions thereof whose relevancy escapes our attention, but the defendant has not pointed out specific testimony showing such delay and we find none. The trial court was of the opinion the evidence "does not affirmatively show that the plaintiff could not have performed·the contract on time even though the extras were not included, "but defendant must show the excess of time was not all caused by himself or his agents the plumbers and others employed by him. We find lack of such proof. Therefore such allowance and damage cannot be sustained. We need not therefore pass upon the question of the validity of such provision or the measure of damages.

With reference to the allowance for improper construction of the roof we note that the complaint of the defendant is based upon the claim that the roof was not smooth; but that there were depressions wherein water was permitted to circulate and that these would result in injury sometime in the future.

The specifications show, and the testimony of the architect brings· out that this roof was to be a dead level roof with drains to carry off the water. There is testimony showing the roof to be higher at the drain spouts than at other parts and that water would settle in spots to the depth of two inches. The defendant was entitled to the kind of a roof specified in his contract. The material out of which the roof was made was chosen in the light of the fact that the roof was to be a level roof. The architect testified that while the roof was being constructed he required the plaintiff to check it with the level. That it is not a level roof is clearly sustained by the evidence. There were numerous pockets and the architect testified that when water settled there and especially when it froze there would be such expansion and contraction as to cause damage to the roof, that the constant moving, taking into consideration the condition of sheets of paper used, would have the effect of loosening this paper, and eventually the roof would leak. The architect testified that the way to remedy the roof was to· ·remove the insulation and relay·the same; that some of the old roofing

and of the old insulation could be used in this work. The only basis for the amount of damage is the statement of the architect as to the reasonable value of removing the roof and replacing it. He said this would be $1,550. He did not show the amount of material which could be utilized, the amount of new material which would be required, the value of this new material, the probable time it would take or any other fact essential to a proper computation by the jury. The plaintiff interposed objections to the question addressed to the architect as to the reasonable cost. The objection was overruled and the ruling is assigned as error. Without this statement there is no basis for valuation. The jury allowed the defendant $775—just one-half of the estimate of the architect. The testimony in rebuttal tended to show that the roof was properly constructed, that it was a "dead level" roof as the term is used, and that there would be little if any cost in remedying any defects. There is no competent testimony to sustain the damages allowed by the jury. There is testimony indicating the defendant was entitled to recover for this item; but this is a case triable to a jury and unless the jury had basis for this decision the amount found can not stand. True the jury inspected the roof and while in doing so they must use their eyes, they can not themselves estimate the damage from what they see. The trial court should have set aside this finding. But even if there be no proof to support the finding of the jury, nevertheless, it does not follow as a matter of course that the defendant is precluded from supplying the defect. The jury found for the defendant and therefore must have found the roof was not constructed according to contract. Clearly this is a finding that the defendant had sustained injury, and there is nothing to indicate that the defect in proof of the amount of damage cannot be supplied. While the trial court should have set aside this finding because of failure of proof as to the amount, yet the defendant should have an opportunity to prove the amount of damages. As to this item, therefore, a new trial is ordered to give the defendant an opportunity to prove this claim; but the new trial is limited to this particular item in the counterclaim; that the defendant may show the roof was not constructed according to contract, and the amount of his damages therefor.

The plaintiff does not argue the alleged error in permitting the counter-claim. There is nothing in the record which made any claim

to injury because of allowance; nor do we find any special argument based on the theory that the court erred in submitting the special questions.

Our statute, § 7633 of the Supp., permits the trial court in its discretion to require a special verdict of the jury and this verdict takes the form of questions in writing, admitting of direct answers, and confining it to matters involved in the merits of the case. The same section says "The court may also direct the jury, if they render a general verdict, to find in writing upon any particular question of fact, to be stated as aforesaid." There was no error in submitting these special findings.

Appellant does not argue specifications of error in the admission of testimony except so far as they relate to the general propositions said to be involved, and so we do not pass upon any of the other assignments.

The judgment of the lower court is modified by the allowance to the plaintiff of items disallowed by the trial court and allowed here, by striking from the judgment of the lower court the items allowed in favor of the defendant and disallowed here, and by permitting a new trial on the items of the counterclaim hereinbefore indicated. With these changes the judgment is affirmed, with costs to the plaintiff in this court.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.